1 Margaret A. Coulter (CA Bar No. 304708)
2 Lauren A. Parker (DC Bar No. 1670885)
  *Pro hac vice*
3 Jason C. Rylander (DC Bar No. 474995)
  *Pro hac vice*
4 CENTER FOR BIOLOGICAL DIVERSITY
  1411 K Street NW, Suite 1300
5 Washington, DC 20005
  Telephone: (202) 961-4820
6
7 *Attorneys for Plaintiff Center for Biological Diversity*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>              Plaintiff,<br>    v.<br><br>DEB HAALAND, Secretary of the Interior, *in her official capacity*; and<br><br>MARTHA WILLIAMS, Director of the U.S. Fish & Wildlife Service, *in her official capacity*,<br><br>              Defendants. | No. 1:22-cv-00335-DAD-BAK<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

    I.    Allowing the Service to Take Five and a Half Years to Complete the Mandatory, Nondiscretionary 12-Month Finding, as Defendants Propose, Exceeds Any Reasonable Notion of an Equitable Remedy. ...................................................................................................... 2

        A.    The ESA protects imperiled species by requiring the Service to act according to strict, mandatory deadlines. .................................................................................................... 2

        B.    The ESA's purpose and unambiguous statutory deadlines limit this Court's judicial discretion in fashioning an equitable remedy. ........................................................... 3

        C.    Plaintiff's proposed remedy upholds the ESA's goals, purpose and statutory scheme. 5

    II.    The Service's Excuses for Failing to Complete the Mandatory, Nondiscretionary 12-Month Finding Are Without Merit. ................................................................................................ 6

        A.    The Service's self-imposed and unnecessarily convoluted listing process delays protection of species and frustrates the purpose of the ESA. ..................................... 7

        B.    The Service currently has all the scientific information required under the ESA to make its 12-month finding on the Temblor legless lizard. ............................................ 9

        C.    The Service cannot rely on budget constraints to avoid mandatory, nondiscretionary ESA deadlines. ........................................................................................................ 11

CONCLUSION ............................................................................................................... 14

CERTIFICATE OF SERVICE ....................................................................................... 15

**TABLE OF AUTHORITIES**

**CASES**

*Alaska Oil & Gas Ass'n v. Pritzker*, 840 F.3d 671 (9th Cir. 2016) ........................................... 10

*Am. Lands All. v. Norton*, 360 F. Supp. 2d 1 (D.D.C. 2003) ............................................... 8, 9

*Biodiversity Legal Found. v. Babbitt*, 63 F. Supp. 2d 31 (D.D.C. 1999) ..................................... 9

*Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166 (9th Cir. 2002) ................................ 5, 6, 9

*Biodiversity Legal Found. v. Badgley*, No. CIV. 98-1093-KI, 1999 U.S. Dist. LEXIS 17806 (D. Or. Nov. 17, 1999) ........................................................................... 6

*Butte Envtl. Council v. White*, 145 F. Supp. 2d 1180 (E.D. Cal. 2001) ....................................... 7

*Colo. River Cutthroat Trout v. Kempthorne*, 448 F. Supp. 2d 170 (D.D.C. 2006) ................... 4, 6

*Ctr. for Biological Diversity v. Haaland*, No. 20 C 1227, 2021 U.S. Dist. LEXIS 174259 (N.D. Ill. Sept. 14, 2021) ............................................................................ 4

*Ctr. for Biological Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 U.S. Dist. LEXIS 34753 (N.D. Cal. Apr. 28, 2008) ................................................................. 6

*Ctr. for Biological Diversity v. Norton*, 163 F. Supp. 2d 1297 (D.N.M. 2001) ................. 6, 12, 13

*Ctr. for Biological Diversity v. Norton*, 254 F.3d 833 (9th Cir. 2001) ................................ 2, 3, 5

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, No. 4:19-cv-354 (D. Ariz. Nov. 24, 2020) ............................................................................................. 5, 6

*Dolan v. United States,* 560 U.S. 605 (2010) .......................................................................... 3, 4

*Fed'n of Fly Fishers v. Daley*, 131 F. Supp. 2d 1158 (N.D. Cal. 2000) ...................................... 2

*Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir. 1999) ............................................ 3, 9, 13

*Friends of Animals v. Haaland*, 997 F.3d 1010 (9th Cir. 2021) ................................................. 3

*Friends of Wild Swan v. U.S. Fish & Wildlife Serv.*, 945 F. Supp. 1388 (D. Or. 1996) ........................................................................................................................ 4, 5

*Marbled Murrelet v. Lujan*, No. C91-522WDR, 1992 U.S. Dist. LEXIS 14645 (W.D. Wash. Sep. 15, 1992) .............................................................................................. 6

*Richardson v. Trump*, 496 F. Supp. 3d 165 (D.C. Cir. 2020) ..................................................... 8

*Save Our Springs v. Babbitt*, 27 F. Supp. 2d 739 (W.D. Tex. 1997) ........................................... 6

*Tenn. Valley Auth. v. Hill*, 437 U.S. 153 (1978) ............................................................................ 4

*W. Watersheds Proj. v. U.S. Fish & Wildlife Serv.*, No. 4:10-CV-229, 2012 U.S.
  Dist. LEXIS 13771 (D. Idaho Feb. 2, 2012) ........................................................................... 12

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) .................................................................. 3

*WildEarth Guardians v. Haaland*, No. CV-20-1035, 2021 U.S. Dist. LEXIS
  188122 (D.D.C. Sept, 30, 2021) ............................................................................................... 4

*Wildwest Inst. v. Kurth*, 855 F.3d 995, (9th Cir. 2017) ................................................................. 2

**STATUTES**

16 U.S.C. § 1533 ............................................................................................................................ 2

16 U.S.C. § 1533(b)(1)(A) ........................................................................................................... 10

16 U.S.C. § 1533(b)(3)(A) ............................................................................................................. 9

16 U.S.C. § 1533(b)(3)(B)(iii)(I) ................................................................................................. 12

Cal. Fish & Game Code § 2072.3 ................................................................................................ 10

**REGULATIONS**

50 C.F.R. § 17.22(d)(1) ................................................................................................................ 12

50 C.F.R. § 17.32(d)(1) ................................................................................................................ 12

50 C.F.R. § 424.14 ......................................................................................................................... 2

50 C.F.R. § 424.14(h)(1) ................................................................................................................ 9

50 C.F.R. § 424.14(h)(2)(iii)(A) .................................................................................................. 12

86 Fed. Reg. 32,241 (June 17, 2021) ............................................................................................. 9

87 Fed. Reg. 26,152 (May 3, 2022) ............................................................................................. 13

**RULES**

Fed. R. Evid. 201(b)(2) .................................................................................................................. 8

**OTHER**

Cal. Fish & Game, *Press Release: California Fish And Game Commission Holds
  Hybrid Meeting* (June 16, 2022), https://wildlife.ca.gov/News/california-fish-
  and-game-commission-holds-hybrid-meeting ......................................................................... 9

Fish & Wildlife Serv., *Envt'l Conservation Online System ("ECOS")*, U.S.
Federal Endangered and Threatened Species by Calendar Year,
https://ecos.fws.gov/ecp/report/species-listings-by-year-totals (last accessed
July 20, 2022) ................................................................................................................. 13

H.R. Conf. Rep. No. 97-835 (1982) ............................................................................. 2, 3, 4

Herman Melville, *Bartleby, the Scrivener: A Story of Wall Street* at 10 (Dover
1990) (1853) ................................................................................................................. 1

Michael Scott et al., *By the Numbers, in The Endangered Species Act at Thirty*
(2006) .......................................................................................................................... 12

Noah Greenwald et al., *Extinction and the U.S. Endangered Species Act*, Peer J. at
5 (Apr. 2019) ................................................................................................................ 3

U.S. Geological Survey, *Species Status Assessment*,
https://www.usgs.gov/science/science-topics/species-status-assessment (last
visited July 19, 2022) ................................................................................................... 8

Univ. of Mo.-Columbia, *Many Endangered Species Face Long Waits for
Protection*, ScienceDaily (Aug. 10, 2016), *available at*
https://www.sciencedaily. com/releases/2016/08/160810181029.htm ....................... 7

# INTRODUCTION

The U.S. Fish and Wildlife Service ("Service") does not dispute that it has violated the Endangered Species Act ("ESA") by failing to issue the required 12-month listing determination for the imperiled Temblor legless lizard by October 20, 2021. Defs.' Mem. In Supp. of Cross-Mot. for Summ. J. at 1 (hereinafter "Defs.' Br."), ECF No. 22 ("The Service does not dispute that . . . it has missed this deadline."). Nonetheless, the Service seeks nearly four more years to complete its congressionally-mandated finding. *Id*. (requesting that this Court "order the Service to submit the finding to the Federal Register by April 30, 2026").

To justify such extraordinary delay, the Service complains that its workload is simply too great to comply with the law, *id.* at 11–13, that its priorities in other listing decisions justify its delay, *id.* at 9–11, and that it lacks the resources to complete the process of its choosing, *id.* at 15–17. But the Service already has the information required to complete the 12-month finding and, as the Service's own declarations show, its fulsome listing process delays action by its own design. Like Bartleby the Scrivener, the Service's protestations to complying with the ESA's listing deadlines amount to no more than, "I would prefer not to." Herman Melville, *Bartleby, the Scrivener: A Story of Wall Street* at 10 (Dover 1990) (1853).

In effect, the Service argues that a nondiscretionary deadline is *actually* discretionary, that a mandatory action is *actually* voluntary, and that the Court should confer on the agency the very flexibility that Congress withheld. Such an argument frustrates and undermines the ESA's listing procedure, the plain language of which could hardly be clearer. The agency's planning preferences cannot trump clear Congressional command, yet that is precisely what Defendants assert.

Given that the Service admits liability, all that remains is for the Court to impose an equitable remedy consistent with the ESA to ensure the imperiled Temblor legless lizard receives timely consideration for potentially lifesaving protections. The Center respectfully asks that this Court reject the Service's dilatory request and order prompt compliance with the ESA's procedures as numerous courts have done before.

# ARGUMENT

## I. Allowing the Service to Take Five and a Half Years to Complete the Mandatory, Nondiscretionary 12-Month Finding, as Defendants Propose, Exceeds Any Reasonable Notion of an Equitable Remedy.

The Service has had more than 21 months to issue a 12-month finding on the Petition, but seeks until April 30, 2026 to do so, Defs.' Br. at 1—requesting that this Court sanction a process whereby the agency takes *more than five and a half years* to complete a finding that the statute and Congress *require* occur within one. Plaintiff's requested relief will bring an end to Defendants' ongoing ESA violation by setting a date certain for the submission of the 12-month finding on the Temblor legless lizard, as the ESA intends, within a reasonable timeframe that vindicates the ESA's goals and purpose. Pl.'s Mem. In Supp. of Mot. for Summ. J. at 9–16 (hereinafter "Pl.'s Br."), ECF No. 15-2.

### A. The ESA protects imperiled species by requiring the Service to act according to strict, mandatory deadlines.

Before an imperiled species can receive ESA protections, the Service must first "list" that species as endangered or threatened. *Wildwest Inst. v. Kurth*, 855 F.3d 995, 1003–04 (9th Cir. 2017); *Ctr. for Biological Diversity v. Norton*, 254 F.3d 833, 839 (9th Cir. 2001) (hereinafter *Gila Chub*) ("Congress from the outset recognized that timeliness in the [ESA] listing process is essential."). "[L]isting is critically important because it sets in motion the Act's other provisions." *Fed'n of Fly Fishers v. Daley*, 131 F. Supp. 2d 1158, 1163 (N.D. Cal. 2000). This process involves considering whether listing may be warranted in findings of increased specificity: first, a 90-day finding; then, a 12-month finding; and potentially culminating in a final rule listing the species and designating critical habitat. Pl.'s Br. at 4 (discussing the requirements of 16 U.S.C. § 1533 and 50 C.F.R. § 424.14).

In 1982, Congress added mandatory deadlines to this ESA listing process specifically to "force action on listing and delisting proposals" after observing that species had "languished for years in 'status reviews'" due to agency inaction. *Gila Chub*, 254 F.3d at 839–40; *see also* Pl.'s Br. at 3–4 (discussing the legislative history of the ESA Section 4 Amendments and H.R. Conf. Rep. No. 97-835 (1982)). By setting forth specific, nondiscretionary deadlines in the ESA for the

listing process, Congress sought to ensure species were "not forgotten in an administrative quagmire." *Gila Chub*, 254 F.3d at 839. These mandatory statutory deadlines ensure that imperiled species do not suffer irreparable losses or go extinct while in administrative limbo. *See* Noah Greenwald et al., *Extinction and the U.S. Endangered Species Act*, Peer J. at 5 (Apr. 2019) (Ex. H to Pl.'s Mot. for Summ. J., ECF No. 15-8. The Service cannot dispute the ESA's purpose and plain statutory language. Defs.' Br. at 9 (discussing H.R. Conf. Rep. No. 97-835 (1982)). Thus, *any* significant delay in the ESA listing process undermines Congressional intent, subverts the statutory scheme, and denies through inaction the statute's necessary protections to imperiled species.

### B. The ESA's purpose and unambiguous statutory deadlines limit this Court's judicial discretion in fashioning an equitable remedy.

Clear congressional commands, like those in the ESA, limit the discretion of courts in crafting equitable relief. *See, e.g.*, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) (holding that "Congress [has] foreclosed the exercise of the usual discretion possessed by a court of equity" in ESA cases); *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999) (finding Congress imposed a mandatory duty on courts to compel the Service to fulfill nondiscretionary ESA duties). So, while courts generally maintain broad discretion to craft equitable relief, "[w]hen Congress by organic statute sets a specific deadline for agency action, neither the agency nor any court has discretion." *Forest Guardians*, 174 F.3d at 1190; *see also cf. Friends of Animals v. Haaland*, 997 F.3d 1010, 1016 (9th Cir. 2021) (Courts "must reject administrative constructions which are contrary to clear statutory intent.").

The Service claims, citing various cases, that "[t]he ESA does not constrain the Court's discretion" "in fashioning a remedy." Defs.' Br. at 7–8, n.3. However, these cases are inapposite here. Quoting the Supreme Court's finding in *Dolan v. United States*, the Service asserts that since the ESA "does not clearly specify the consequences of a missed deadline" in its citizen suit provision, there is no limitation on the Court's broad discretion in fashioning a remedy. Defs.' Br. at 7 (citing *Dolan v. United States,* 560 U.S. 605, 609–10 (2010)). However, *Dolan* not only looked to "statutory language" but also "to the relevant context" and "purpose" the missed

deadlines were "designed to serve." 560 U.S. at 609. Defendants ignore that Congress, in crafting the 1982 Section 4 amendments, spoke *precisely* to the issue of the "consequences of a missed deadline" in the ESA context. There, Congress found the "footdragging efforts of a delinquent agency" were utterly inadequate to effectuate its intent and the ESA's purpose of conserving imperiled species, and so imposed mandatory nondiscretionary deadlines. H.R. Conf. Rep. No. 97-835 at 20–22 (1982). It is axiomatic that when the agency continues its "footdragging" and violates the deadlines Congress imposed to prevent the agency from thwarting its intent and the purpose of the ESA— "to halt and reverse the trend toward species extinction," *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 184 (1978)—that continued violation of those deadlines similarly thwarts the statute's purpose.

The Service cites various non-binding precedent where other courts exercised some discretion "in fashioning an appropriate remedy in ESA citizen-suit cases." Defs.' Br. at 8 n.3; *see also id.* at 13 (citing additional cases for this proposition). Rather than supporting Defendants' position, in *Colorado River Cutthroat Trout v. Kempthorne*, the court granted equitable relief to the plaintiffs, requiring the delinquent agency to issue its long-delayed status review for the species within a timeframe envisioned by the ESA's deadline provisions—the same nine-month remedial timeframe grounded in the ESA's statutory scheme sought by Plaintiffs, here. 448 F. Supp. 2d 170, 178 (D.D.C. 2006) ("Under the statute, if the FWS had made a timely 90-day finding, it would have been allowed a further nine months to conduct the status review."). *See also Friends of Wild Swan v. U.S. Fish & Wildlife Serv.*, 945 F. Supp. 1388 (D. Or. 1996) ("Funding considerations do not repeal or modify FWS's duties under the ESA."). Other district courts have undertaken a similar calculus to that proposed by the Center—based in fulfilling the purpose of the ESA—for fashioning a remedy when, as here, the agency has violated a nondiscretionary ESA deadline. *See, e.g.*, *WildEarth Guardians v. Haaland*, No. CV-20-1035, 2021 U.S. Dist. LEXIS 188122, at *30 (D.D.C. Sept, 30, 2021) (ordering the Service to issue the unlawfully delayed 12-month findings within 2 years and 2 years 9 months of the court's order); *Ctr. for Biological Diversity v. Haaland*, No. 20 C 1227, 2021 U.S. Dist. LEXIS 174259, at *25 (N.D. Ill. Sept. 14, 2021) (ordering the Service to issue the 12-month finding within 2 years and 9

months of the court's order"); Order, *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, No. 4:19-cv-354 (D. Ariz. Nov. 24, 2020), ECF No. 31 (requiring the Service FWS submit a 12-month finding within three months of the court's order); *Friends of Wild Swan v. U.S. Fish & Wildlife Serv.*, 945 F. Supp. 1388 (D. Or. 1996) (reversed by the 9th Circuit in an unpublished opinion). In none of these cases did the court endorse a remedial deadline as far into the future as that sought by the Service here. Further, the non-precedential cases cited by Defendants do not undermine the Supreme Court and in-circuit precedent cited by Plaintiff in support of a remedy which upholds the purpose and intent of Congress in enacting the ESA. *See, e.g.*, Pl.'s Br. at 10–11.

### C. Plaintiff's proposed remedy upholds the ESA's goals, purpose and statutory scheme.

Plaintiff's proposed remedy fairly and appropriately balances congressional intent with any actual constraints alleged by the Service. In ESA listing cases, various U.S. Courts of Appeals have rebuked the Service for its attempts to draw out listing determinations beyond the ESA's 12-month deadline, and district courts have often ordered remedies with deadlines of months—not years, as requested by Defendants—in accordance with statute's goals, purpose and statutory scheme. *See, e.g.*, *Gila Chub*, 254 F.3d at 840 (finding the Service's refusal to make timely 12-month findings for the Chiricahua leopard frog and Gila chub ran counter to Congress's intent in imposing these deadlines, and reversing and remanding the district court's refusal to issue injunction);[1] *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1176 (9th Cir. 2002) (affirming district court injunction requiring 12-month findings for 3 species be made within two weeks, one month, and four months, and explaining that Congress had "intended to limit the flexible deadline governing the initial [90-day threshold] listing determination by enacting the firm deadline for making the final determination.").

Similarly, numerous district courts have ordered the Service to make 12-month findings in as little as thirty days and up to nine months. *See, e.g.*, *Ctr. for Biological Diversity v. Norton*,

---

[1] The claims in *Gila Chub* were ultimately dismissed in light of settlement among the parties requiring the Service to issue the required 12-month findings within nine months.

Pl's Reply ISO Mot. Summ. J.                 5

163 F. Supp. 2d 1297, 1299–300 (D.N.M. 2001) (hereinafter *Checkerspot Butterfly*) (ordering Service to complete its 12-month determination within thirty days); *Save Our Springs v. Babbitt*, 27 F. Supp. 2d 739, 748–49 (W.D. Tex. 1997) (same, with regard to the Barton Springs salamander); *Biodiversity Legal Found. v. Badgley*, No. CIV. 98-1093-KI, 1999 U.S. Dist. LEXIS 17806, at *23 (D. Or. Nov. 17, 1999), *aff'd in relevant part, rev'd in part* 309 F.3d 1166 (9th Cir. 2002) (requiring 12-month findings for Spalding's catchfly, mountain yellow-legged frog, and great basin red-band trout be made within two weeks, one month, and four months); Order, *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, *supra*, ECF. No. 31 (requiring the Service submit a 12-month finding on the enrygo plant within three months of the court's order); *Colo. River Cutthroat Trout v. Kempthorne*, 448 F. Supp. 2d at 178 (ordering the Service to complete its 12-month finding within nine months); *see also cf. Marbled Murrelet v. Lujan*, No. C91-522WDR, 1992 U.S. Dist. LEXIS 14645 (W.D. Wash. Sep. 15, 1992) (ordering the final rule to be published by noon three days after the court's decision); *Ctr. for Biological Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 U.S. Dist. LEXIS 34753, at *10-11 (N.D. Cal. Apr. 28, 2008) (ordering FWS to issue a final listing determination for the polar bear within 30 days of the Court's ruling).[2]

## II. The Service's Excuses for Failing to Complete the Mandatory, Nondiscretionary 12-Month Finding Are Without Merit.

The Service's reasons for failing to complete the 12-month finding by the ESA's deadline neither excuse its violation of law nor justify its request that this Court give the Service more than five times the amount of time dictated by statute to complete its work. The Service's proposed remedy inappropriately and unlawfully elevates agency preferences—for more scientific studies and a bureaucratic process rife with discretionary reviews—over Congress' intent and the ESA's

---

[2] Defendants note that in the marbled murrelet and polar bear cases the Service's unlawfully delayed final rules had already been mostly drafted by the relevant field offices at the time the courts issued their remedies. Defs.' Br. at 15 n.6. However, that the Service was near to completing its work in those cases does not preordain that here the agency will be hamstrung into making a substandard or legally indefensible finding. Rather, the polar bear and marbled murrelet cases only serve to underscore the Service's longstanding practice of noncompliance with ESA mandatory deadlines until required to do so by court order.

mandates. Defs.' Br. at 9–10; Decl. of Michael Fris in Supp. of Defs.' Cross-Mot. for Summ. J. at ¶¶ 5, 29, ECF No. 22-1. *See also cf. Butte Envtl. Council v. White*, 145 F. Supp. 2d 1180, 1185 (E.D. Cal. 2001) (rejecting Service's assertion that its preference for ecosystem-based, rather than species-by-species, approach justified Service's failure to meet ESA's mandatory listing deadlines). Defendants' stated preferences should not dictate this Court's remedy; nor do its budgetary laments excuse it from completing its Congressionally mandated tasks.

### A. The Service's self-imposed and unnecessarily convoluted listing process delays protection of species and frustrates the purpose of the ESA.

Defendants claim Plaintiff's proposed remedy is "infeasible," listing myriad internal hoops the Service must jump through before it can comply with the statute's nondiscretionary mandate to issue a 12-month finding for the Temblor legless lizard. Defs.' Br. at 1. This is precisely our point. Most of the steps in the Service's current listing process are not required by the ESA and merely reflect agency practice. This Court should not accept the Service's self-imposed bureaucratic morass as justification for noncompliance with the ESA.

Over time, the Service has created an extraordinarily complicated listing process that far exceeds anything the ESA requires. Decl. of Noah Greenwald in Supp. of Pl.'s Mot. for Summ. J. at ¶¶ 6–7, 11, ECF No. 15-8. This extensive and confusing process—as much as the increase in the number of imperiled species needing determinations—has led to severe delays in protecting species. *See* Univ. of Mo.-Columbia*, Many Endangered Species Face Long Waits for Protection*, ScienceDaily (Aug. 10, 2016), *available at* https://www.sciencedaily.com/releases/2016/08/160810181029.htm; *see also* Greenwald Decl. at ¶ 5. Indeed, the Service's listing process now bears little resemblance to Congress' carefully crafted ESA Section 4 listing procedures and timelines, and frequently denies species the timely protections they desperately need.

As depicted in its own flowchart, reproduced and attached hereto as Ex. I, and in the agency's declarations in this case, the Service's current listing process involves twelve steps that include at least thirteen sub-steps.[3] Additionally, it requires multi-level organizing with several

---

[3] It is proper for this Court to take judicial notice of the contents of the Service's flowchart, reproduced on the following pages, "because its accuracy can be readily determined from sources

offices, various levels of comments and review, and numerous stages and phases of approval before finally publishing a listing in the Federal Register. Each of these steps and sub-steps individually can span over several months. *See* Greenwald Decl. at ¶¶ 4–6. And as the Service itself concedes, the 90-day and 12-month findings "are only the *initial* steps in [its] process and alone do not list species and extend protections under the ESA." Def. Br. at 11 (citing Decl. of Gary Frazer in Supp. of Defs.' Cross-Mot. for Summ. J. at ¶ 16, ECF No. 22-2) (emphasis added). But there is more. On top of this already Byzantine evaluation, the Service now requires preparation of a Species Status Assessment ("SSA"), a related but entirely separate process not represented on the flowchart. U.S. Geological Survey, *Species Status Assessment*, https://www.usgs.gov/science/science-topics/species-status-assessment (last visited July 19, 2022); *see also* Fris Decl. at ¶¶ 6–12. The additional SSA process consists of three main stages: "Stage 1, documenting the species life history and ecological relationships to provide the foundation for the assessment, Stage 2, describing and hypothesizing causes for the species current condition, and Stage 3, forecasting the species future condition." *Id*. Each step requires coordination of several offices and scientists. After the draft SSA is prepared, the report is peer reviewed various times, reviewed by partners and other officials several more times, finalized, and then reviewed and approved by decisionmakers in accordance with the flowchart process (Ex. I). This process requires review and comment at every stage which often takes several months to complete. *See generally* Greenwald Decl. at ¶¶ 4–6. However, there is *no legal requirement* for the Service to complete a formal SSA at all, let alone before it makes a 12-month finding.

   The ESA simply does not contemplate such a lengthy and redundant process for making initial listing determinations. Through the creation of these prolonged internal processes, the Service has made it effectively impossible to meet the ESA's statutory deadlines. This is a mere continuance of the Service's long-standing history of avoiding compliance with the ESA. *See, e.g.*, *Am. Lands All. v. Norton*, 360 F. Supp. 2d 1, 7 (D.D.C. 2003) ("[T]his case is one in a

---

that cannot reasonably be questioned," Fed. R. Evid. 201(b)(2). *See, e.g.*, *Richardson v. Trump*, 496 F. Supp. 3d 165, 173 n.9 (D.C. Cir. 2020) (taking judicial notice of a U.S. Postal Service press release "because it is a federal agency document available from a reliable source").

number of cases in which the defendants have set forth arguments about why they do not have to comply with the petition process's requirements."); *Biodiversity Legal Found. v. Badgley*, 309 F.3d 116 (9th Cir. 2002) (rejecting the Service's position that a 90-day determination can be postponed indefinitely6 if not practicable, and instead requiring that both 90-day and 12-month findings "must be made within one year"); *Forest Guardians*, 174 F.3d at 1181 (rejecting the Service's argument that a spending moratorium imposed by Congress made it impossible to meet ESA deadlines and finding that the agency failed to comply with "mandatory, non-discretionary duty unambiguously imposed by the ESA"); *Biodiversity Legal Found. v. Babbitt*, 63 F. Supp. 2d 31, 32 (D.D.C. 1999) (finding "it was unlawful for FWS to wait nearly two years before issuing its [90-day] preliminary finding"); *see also cf. Am. Lands*, 360 F. Supp. 2d at 8 (invalidating the Service's internal listing priority policy because it allowed the agency to avoid its mandatory, non-discretionary 12-month deadline).

### B. The Service currently has all the scientific information required under the ESA to make its 12-month finding on the Temblor legless lizard.

While a thorough review of the basis for listing should be expected, the Service currently has all the scientific information required under the ESA to make its 12-month finding on the Temblor legless lizard. When evaluating a listing petition at the 90-day stage, the Service must "make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A); *see also* 50 C.F.R. § 424.14(h)(1). The Service found that listing the Temblor legless lizard "may be warranted" after evaluating the scientific and commercial information in the Center's Petition. 86 Fed. Reg. 32,241, 32,242 (June 17, 2021); *see also* Petition, Pl.'s Ex. A, ECF No. 1-1. In addition to the scientific information provided in the Center's ESA listing Petition, the California Department of Fish & Game recently granted the Temblor legless lizard candidate status under the California Endangered Species Act ("CESA") in response to the Center's CESA petition. Cal. Fish & Game, *Press Release: California Fish And Game Commission Holds Hybrid Meeting* (June 16, 2022), https://wildlife.ca.gov/News/california-fish-and-game-commission-holds-hybrid-meeting ("The Commission determined that listing Temblor legless lizard as threatened or

endangered under the CESA may be warranted. This action commences a one-year status review . . . during which Temblor legless lizard is protected as a candidate species."); *see also* Pl.'s Br. at 2 n.1. This CESA petition also aggregates the best existing scientific information on the species for the Service. *See* CESA Petition, Ex. C to Pl.'s Mot. for Summ. J., ECF No. 15-3.[4]

But the Service's own declarations indicate it is seeking more data in contravention of the ESA's requirement that listing decisions be made "solely on the basis of the best scientific and commercial data *available*," 16 U.S.C. § 1533(b)(1)(A) (emphasis added). Defendants' Declarant Michael Fris, Field Supervisor for the Sacramento Fish and Wildlife Office, states that the field portion of a research study "led by the United States Geological Survey to better understand the status of the Temblor legless lizard" "is completed" with a final report anticipated in 2023. Fris Decl. at ¶ 5. However, Mr. Fris further states that the Service is seeking "to fund at least one additional year of surveys" for which a final report "would not be available until 2024." *Id.* at ¶¶ 5, 29. The Service's desire to conduct additional research or studies cannot lawfully justify delay in meeting the ESA's mandatory deadlines for the 12-month finding. Pl.'s Br. at 12. Congress recognized that perfection should not be the enemy of the good when it required the Service to make 12-month findings based "solely" on available data. 16 U.S.C. § 1533(b)(1)(A); *see also Alaska Oil & Gas Ass'n v. Pritzker*, 840 F.3d 671, 678 (9th Cir. 2016) (explaining that the ESA requires the Service to use the "best scientific and commercial data available" not the "best data possible").

Defendants further argue that timely issuing the 12-month finding "would require delaying other listing obligations . . . that the Service has determined have a higher conservation priority" in its National Listing Workplan. Defs.' Br. at 1; *see also id.* at 9 (citing a "growing backlog of petition findings and candidate species" as justification for the Service's failure to

---

[4] To be accepted, CESA petitions must include information regarding "the population trend, range, distribution, abundance, and life history of a species, the factors affecting the ability of the population to survive and reproduce, the degree and immediacy of the threat, the impact of existing management efforts, suggestions for future management, and the availability and sources of information," and "the kind of habitat necessary for species survival, a detailed distribution map, and any other factors that the petitioner deems relevant." Cal. Fish & Game Code § 2072.3.

"respond[] in a timely way to petitions at the beginning of the listing process"). However, this Court should not assume that merely listing a species on the Service's Workplan (whatever the projected dates for completing required actions), means that the action will in fact occur on the Service's aspirational timeframe. In fact, the Service regularly misses deadlines stated in its own Workplan: in 2017, the first year the Workplan was in effect, the Service failed to make findings scheduled in the Workplan for 30 species; in 2018, the number rose to 78; in fiscal years 2019 and 2020, it was 46 and 58 species, respectively; and in 2021, 66. Greenwald Decl. at ¶¶ 8–10.

Defendants' citation to the Service's "growing backlog" reflects the ongoing and escalating extinction crisis and only demonstrates that the Service's listing process is failing to effectuate the ESA's purpose and Congress's intent. Nor is it conceivable that anything less than the Service's desired five and a half years for a 12-month finding would "require a rushed decision that might not allow adequate time to gather and analyze the required science and data." Def. Br. at 12 (citing Fris Decl. ¶¶ 3, 5, 29). The Service's position is proof of the aphorism that "work expands to fill the time allotted," which thus renders it "impossible" for the agency to comply with the ESA.[5]

### C. The Service cannot rely on budget constraints to avoid mandatory, nondiscretionary ESA deadlines.

The Service's budgetary situation should not prevent it from complying with the ESA. First, the Service could have availed itself of the ESA's specific provision designed to facilitate prioritization in light of resource constraints—a warranted but precluded finding. 16 U.S.C. §

---

[5] In discussing its prioritization preferences, Defendants mischaracterize Plaintiff's discussion of the Service's workload. Defs.' Br. at 14 (stating "although Plaintiff contests that the Service has 'just 11 species listing actions to consider between now and 2026,' Plaintiff omits that the current Workplan, published in March 2022, addresses 310 actions"). Rather, Plaintiff asserted that the field office tasked with completing the 12-month finding for the Temblor legless lizard in Sacramento—not the Service as a whole—"has just 11 species listing actions to consider between now and 2026." Pl.'s Br. at 14. Defendants' own declarations corroborate Plaintiff's point that the relevant field office here carries a more manageable workload than the Service as a whole. Fris Decl. at ¶ 26 (listing the Sacramento Fish and Wildlife Office's workload as including the Temblor legless lizard plus "17 other listing actions between FYs 2022 and 2027" which include "eleven yet-to-be completed 12-month findings," for only seven of which is the Sacramento Field Office "serving as the lead office").

1533(b)(3)(B)(iii)(I) (allowing for a finding that a petitioned action is "warranted but precluded" where "the immediate proposal and timely promulgation of a final regulation implementing the petitioned action . . . is precluded by pending proposals to determine whether any species is an endangered species or a threatened species"); *see also* 50 C.F.R. § 424.14(h)(2)(iii)(A). Formal status as a "candidate" species after a warranted but precluded finding at least provides some benefit to the species, including the opportunity to develop Candidate Conservation Agreements, *see, e.g.*, 50 C.F.R. §§ 17.22(d)(1), 17.32(d)(1), but the lack of any determination by the Service denies the lizard even this.

Second, the Service's budgetary constraints are a self-inflicted wound that do not excuse the agency's noncompliance with the statute, nor justify its request for more than five times the amount of time mandated in the ESA to complete what should be a 12-month finding. Defendants spill much ink trying to convince this Court that its budgetary shortfalls are due to restrictions and caps imposed by Congress. Defs.' Br. at 15–17; Frazer Decl. at ¶¶ 4–10 (discussing Defs.' Excerpts from Appropriations Legislation for FY2014 through FY202, ECF No. 22-4). However, for every year that the Petition to list the Temblor legless lizard has been before the Service, the agency itself has requested a cap on funding for listing activities. *See W. Watersheds Proj. v. U.S. Fish & Wildlife Serv.*, No. 4:10-CV-229, 2012 U.S. Dist. LEXIS 13771, at *44 (D. Idaho Feb. 2, 2012) (observing that the Service's "financial pinch" is not being imposed "entirely from the outside" because the Department of the Interior ("DOI") "has limited its budget requests and asked for spending caps on listing activities"); *Checkerspot Butterfly*, 163 F. Supp. 2d at 1300 (discussing the Department of the Interior's admission that "the listing program [budget] is not proposed at a level that would allow the [Service] to meet all of the [ESA's] requirements and deadlines"); J. Michael Scott et al., *By the Numbers, in The Endangered Species Act at Thirty* at 16, 31 (2006) (discussing DOI's request that Congress impose spending caps on its ESA duties). Thus, while the Service is correct that Congress has annually limited amount of the Service's budget which it can use on listing, Congress has only done so *at the request of its parent agency*. Pl.'s Br. at 13.

The Service's lengthy exposition on the appropriations process, however, is ultimately

beside the point. Regardless of its budgetary limitations, the Service must learn do more with less. A process designed to meet the deadlines of the ESA utilizing the best *available* scientific and commercial data, rather than bootstrapping review upon review while awaiting ever more information, could do just that. In fact, under the Obama and Clinton administrations the Service completed more listings with substantially similar budgets. Greenwald Decl. at ¶ 7 (discussing wide variation in the number of species determinations made by the Service depending on presidential administrations); *see also* Fish & Wildlife Serv., *Envt'l Conservation Online System ("ECOS")*, U.S. Federal Endangered and Threatened Species by Calendar Year, https://ecos.fws.gov/ecp/report/species-listings-by-year-totals (last accessed July 20, 2022).[6] It is no wonder backlogs result when the pace of listing is determined more by political will than the strict deadlines Congress intended.

This Court cannot condone the Service's slow, onerous, and expensive listing process if it undermines the functionality of the ESA's statutory scheme.[7] *See, e.g.*, *Forest Guardians*, 174 F.3d at 1193 (declining to consider the Service's resource inadequacy argument at the remedy stage and ordering the Service to issue its critical habitat designation "as soon as possible, without regard to the Secretary's other priorities under the ESA").[8] The Service instead must design a

---

[6] From 1991–1994 when Congress briefly imposed a listing moratorium, the Service listed an average of 88.5 species a year, including 128 in 1994 alone. *Id.* The George W. Bush administration averaged just 6.5 listing per year from 2001–2008. *Id.* The Obama administration managed 42 species listings per year, and the Trump administration just 4.5. *Id.*

[7] Throughout their brief when discussing workload, Defendants cite numerous down listing and delisting actions, Defs.' Br. at 14–17; Fris Decl. at ¶ 27; Frazer Decl. at ¶¶ 21–23, but that workload has a separate budget from the funds allocated for listing petitions. *See, e.g.*, 87 Fed. Reg. 26,152, 26,158 (May 3, 2022) ("work on recovery actions does not preclude the availability of resources for completing new listing work").

[8] Defendants assert that "the system was out of balance" as a result of "20 lawsuits filed seeking to enforce nearly 800 listing petition deadlines" between 2009 and 2010, but it is inappropriate for this Court to consider "budgetary cris[es] caused by judicially-imposed deadlines in other cases" in issuing an equitable remedy for a violation of a mandatory statutory duty. *Checkerspot Butterfly,* 163 F. Supp. 2d at 1299–300; *see also cf. Forest Guardians*, 174 F.3d at 1192–93 (finding "[i]n the face of Congress' clear command, the [agency's] inadequate resource argument must fail with respect to the appropriate remedy," but noting that "the inadequate resources defense could arise at the contempt stage, as a traditional impossibility defense . . . if the [agency] fails to comply with an order enjoining him to designate the critical habitat by a time certain").

more efficient process that allows it to complete the mandatory ministerial findings required by the ESA within the statutory deadlines. Until that occurs—and to help ensure it does—courts should order the Service to comply with the ESA and promptly complete its mandatory duties.

**CONCLUSION**

The Service concedes it has violated the ESA by failing to complete its 12-month finding for the Temblor legless lizard. Thus, all that is left to decide in this case is remedy. The purposes and structure of the ESA are best served by Plaintiff's proposed remedy, which applies the time frame chosen by Congress, and does not reward dilatory tactics that Congress expressly sought to prohibit. For this, and the reasons discussed more fully herein, Plaintiff respectfully requests that the Court issue an order finding Defendants violated the ESA by failing to make a 12-month finding on their Petition to list the Temblor legless lizard and require that the Service issue its 12-month finding within nine months of the date of this Court's order.

Respectfully submitted this 25th day of July 2022,

*/s/ Margaret A. Coulter*
Margaret A. Coulter (CA Bar No. 304708)
mcoulter@biologicaldiversity.org

Lauren A. Parker (DC Bar No. 1670885)
lparker@biologicaldiversity.org
*Pro hac vice*

Jason C. Rylander (DC Bar No. 474995)
jrylander@biologicaldiversity.org
*Pro hac vice*

CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street NW, Suite 1300
Washington, DC 20005
Telephone: (202) 961-4820

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment and In Opposition to Defendants' Cross-Motion for Summary Judgment and Exhibit I with the Clerk of the Court for the United States District Court for the Eastern District of California by using the CM/ECF system, which will serve a copy of the same on the counsel of record.

<em>/s/ Margaret A. Coulter</em>